UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| | |
|---|---|
| COMMERCE AND INDUSTRY INSURANCE COMPANY, as subrogee of PHIL & FIA RICHMOND,<br><br>          Plaintiffs,<br><br>     vs.<br><br>UNLIMITED CONSTRUCTION SERVICES, INC., KAINANI VILLAS, LLC, KUKUIʻULA RESIDENTIAL DEVELOPMENT, LLC, LAYTON CONSTRUCTION COMPANY, LLC, and KUKUIʻULA DEVELOPMENT COMPANY (HAWAII), LLC,<br><br>          Defendants. | CIVIL NO. 16-00594 JAO-RLP<br><br><br>ORDER GRANTING DEFENDANT UNLIMITED'S MOTION FOR SUMMARY JUDGMENT |

ORDER GRANTING DEFENDANT UNLIMITED'S MOTION FOR
SUMMARY JUDGMENT

## I.    INTRODUCTION

Plaintiff Commerce and Industry Insurance Company brought this

subrogation action following the payment of insurance benefits to Phil and Fia

Richmond, for a policy claim resulting from red dirt damage to the Richmonds'

primary residence on Kauai.  Plaintiff sues for negligence, trespass, and private

nuisance, alleging that the Defendant construction companies[1] unreasonably and tortiously caused damage to the Kauai residence, and seeking all damages proximately caused by Defendants. Before the Court are Defendant Unlimited's Motion for Partial Judgment on the Pleadings and Motion for Summary Judgment. For the reasons set forth below, the Court concludes that Defendant's defense of consent precludes Plaintiff's trespass and nuisance claims, and Defendant's waiver and assumption of risk defenses preclude Plaintiff's negligence claim. Defendant's Motion for Summary Judgment is therefore GRANTED, and the Court need not address Defendant's Motion for Partial Judgment on the Pleadings.

## II.   BACKGROUND

### A. Facts

Unless otherwise indicated, the following facts are not in dispute. In 2007, Philip and Fia Richmond ("the Richmonds") purchased Lot 79 in the Kukuʻula residential development on Kauai, with plans to build a custom home for themselves and their son Palmer, who had special needs. Doc. No. 27 at ¶¶ 1, 14; Plaintiff's First Supplemental Separate and Concise Statement of Facts ("Pl.'s

---

[1] Plaintiff Commerce and Industry Insurance Company brought its claims against Unlimited Construction Services, Inc. ("Defendant" or "Defendant Unlimited"); A&B Properties, Inc.; DMB Associates, Inc.; The Club at Kukuʻula; Kainani Villas, LLC; Kukuʻula Residential Development; Layton Construction Company, LLC; and Kukuʻula Development Company (collectively "Defendants"). A&B Properties, Inc.; DMB Associates, Inc.; The Club at Kukuʻula; and Layton Construction Company, LLC are no longer parties to this action.

FSCSF") at ¶ 3.  Plaintiff Commerce and Industry Insurance Company ("CIIC")

provided homeowners insurance coverage to the Richmonds for the custom home,

located at 2791 Uluwehi Street in Koloa ("the Property").  Doc. No. 27 at ¶¶ 1, 14.

The Richmonds purchased the Property on January 10, 2008, Doc. No. 140 at n.2,

and were represented by attorney Anne Lopez in conjunction with the property

conveyance.  Defendant's Separate and Concise Statement of Facts ("Def.'s CSF")

at ¶ 7.  The Richmonds acquired the Property via a Limited Warranty Deed ("the

Deed"), which provided in relevant part:

> The Lot is also subject to (in addition to the matters set forth
> above) each and every provision of that certain Community
> Charter for Kukui'ula, dated May 8, 2006, and recorded in the
> Bureau of Conveyances of the State of Hawaii (the "Bureau")
> as Document No. 2006-088739 . . . which imposes upon the Lot
> and other real property, under a general plan of development,
> certain covenants, conditions, restrictions, easements,
> servitudes and other provisions running with the land and
> binding title to the Lot and all owners of any portion thereof or
> interest therein, whether or not referenced in any future deed or
> instrument.

Def.'s CSF at ¶¶ 6, 8.  The Community Charter ("the Charter") referenced in the

Deed provided in relevant part:

> Chapter 15
> Disclosures and Waivers
> This chapter discloses some important information about
> Kukui'ula for the benefit of prospective purchasers of property
> in Kukui'ula. *Each Owner, by accepting a deed to property in
> Kukui'ula, also accepts and agrees to the matters set forth in
> this chapter.*
> . . .

15.3. Changes in Master Plan

Each Owner acknowledges that Kukuiʻula is a planned resort community, *the development of which is likely to extend over many years*[.]

. . .

15.6. Ongoing Construction Activities

Construction activity by the Declarant, The Club, Builders designated by the Declarant, or other Owners will continue within Kukuiʻula, as well as on properties, including the golf course, adjacent to and within Kukuiʻula for an extended period of time. Such construction activity shall include the use of construction vehicles and heavy equipment for construction purposes that *may result in the transmission, discharge, or emission of* surface water, runoff, smoke, noise, *dust*, odors, noxious vapors, chemicals, vibrations, and other annoyances, as well as pose certain risks of injury to an Owner and his/her guests and visitors, and may limit the Owner's access to portions of Kukuiʻula.

. . .

15.13. Blasting and Other Activities

All Owners, occupants, and users of Units are hereby placed on notice that the Declarant, Declarant Affiliates, and/or their agents, contractors, subcontractors, licensees, and other designees, successors, or assigns, may, from time to time, conduct blasting, excavation, construction, and other activities within Kukuiʻula, *which may cause windblown dust and other nuisances typically associated with such activities. By the acceptance of a deed* or other conveyance or mortgage, leasehold, license, or other interest, and by using any portion of a Unit or Kukuiʻula generally, the *Owners and all occupants and users of Units acknowledge, stipulate, and agree (a) that such activities shall not be deemed nuisances, or noxious or offensive activities, under any applicable covenants or at law generally*; (b) not to enter upon, or allow their pets, children, or other Persons under their control or direction to enter upon (regardless of whether such entry is a trespass or otherwise) any property within or in proximity to the Unit where such activities are being conducted (even if not being actively conducted at the time of entry, such as at night or otherwise during non-working hours); (c) that the Declarant, any Declarant Affiliate, *and all of*

*their agents, contractors, subcontractors, licensees, and other designees, successors, and assigns, shall not be liable but, rather, shall be held harmless for any and all losses, damages (compensatory, consequential, punitive, or otherwise), injuries, or deaths arising from or relating to the aforesaid activities*; (d) that any purchase or use of any portion of a Unit has been and will be made with full knowledge of the foregoing; and (e) that this acknowledgment and agreement is a material inducement to the Declarant or its Declarant Affiliates to sell, convey, lease, and/or allow the use of Units.

Def.'s CSF at ¶ 9; Pl.'s FSCSF, Ex. 3 at 58–62 (emphases added).  It is undisputed that the Richmonds received a copy of the Charter at the time of closing.  Def.'s CSF, Ex. A at 140–142.

The Richmonds moved into their completed home on May 16, 2013.  Pl.'s FSCSF at ¶ 14.  Starting in November 2014, the Richmonds began noticing heavy amounts of red dirt accumulating in their home.  Doc. No. 27 at ¶ 9; Pl.'s FSCSF at ¶ 15.  Plaintiff alleges that the Richmonds' housekeeper, who had been cleaning the home for eight to ten hours a week, then had to assist daily with cleaning the red dirt, and could not keep up with the dirt entering the home.  Pl.'s FSCSF at ¶ 17–21.  Fia Richmond ("Fia") testified that when using the pool at their residence, she had to brush red dirt off the seat to find a place to sit.  Pl.'s FSCSF, Ex. 2 at 56.  Plaintiff alleges that at this time, multiple construction projects were underway near the Property.  Doc. No. 27 at ¶¶ 10, 12–13.  Defendant Unlimited was constructing bungalows directly west of the Property, while Defendant Kukui'ula Development Company ("KDC") was conducting landscaping work

directly north of the Property, and Defendants Kainani Villas ("Kainani") and Kukui'ula Residential Development ("KRD") were constructing a new resort community northeast of the Property. Doc. No. 27 at ¶¶ 10, 12–13. Defendant Unlimited began constructing on September 26, 2014. Pl.'s FSCSF at ¶ 22. It is unclear from the record when the KDC, Kainani, and KRD projects began, but Plaintiff's Amended Complaint alleges that the damage began "on our about November 6, 2014," and that Defendants were constructing "[a]t all pertinent times." Doc. No. 27 at ¶ 9–12.

In any event, the Richmonds testified that there were "piles and piles of dirt" on the construction sites for "weeks on end" and "for over a year, year and a half," and that "many times…dirt was left uncovered." Pl.'s FSCSF, Ex. 2 at 39–42. Fia said during her deposition that Defendant Unlimited's dust fence was too low, and was lower than the dust fence the Richmonds were required to use when constructing their home. Pl.'s FSCSF, Ex. 2 at 43.

On or about December 5, 2014, the Richmonds met with representatives from Defendant Unlimited to discuss the excessive amount of dirt entering their home. Pl.'s FSCSF at ¶ 24. Phillip Richmond ("Phil") testified that the purpose of the meeting was "[t]o understand what the extent of the construction was" and that he had "concerns as a homeowner." Pl.'s FSCSF, Ex. 1 at 54. Fia testified that they discussed the red dirt in the house and on the lanai, and Phil asked "how they

were going to manage or take care of cleaning it." She explained, "Phil's biggest issue was how they were going to deal with the red dirt and the iron deposits." Pl.'s FSCSF, Ex. 2 at 56–57.

Sometime after the meeting with Defendant Unlimited, the Richmonds filed a claim with CIIC. Pl.'s FSCSF, Ex. 1 at 95–96. CIIC alleges that it paid the Richmonds $817,769.08 as a result of the red dirt damage caused by Defendants' construction projects. Doc. No. 27 at ¶¶ 13, 15.

**B. Procedural History**

Plaintiff filed its Complaint in the United States District Court for the District of Hawaii on November 3, 2016. Doc. No. 1. The Complaint alleges that Defendants' negligence caused damage to the Richmonds' residence (Count I), that Defendants trespassed on the Richmonds' Property by causing red dirt to flow onto the Property (Count II), and that the red dirt resulting from Defendants' behavior constituted a private nuisance (Count III). Doc. No. 1 at 4–8. Plaintiff contends that Defendant Unlimited engaged in unreasonable and tortious behavior, resulting in an unusual amount of fugitive red dirt blown by the wind and causing damage to Property, including the staining of tiles and furniture and damage to the pool filtration system. Doc. No. 27 at ¶ 13. Plaintiff seeks various forms of relief, including all damages proximately caused by the Defendants, individually and/or joint and severally. Doc. No. 1 at 8.

Defendant filed the present Motion for Summary Judgment on June 13, 2018. Doc. No. 110. Plaintiff filed its Opposition to the Motion for Summary Judgment on October 17, 2018. Doc. No. 136. Defendant replied to the Motion on October 24, 2018. Doc. No. 141. Plaintiff submitted its First Amended Separate and Concise Statement of Facts on November 1, 2018, and Defendant replied on November 5, 2018. Doc. Nos. 145, 147. The Motion was heard on November 7, 2018.

## III.    LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). On a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party. *State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir. 1989).

Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *T.W. Elec.*, 809 F.2d at 630; Fed. R. Civ. P. 56(c). The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The nonmoving party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *T.W. Elec.*, 809 F.2d at 630; *Blue Ocean Pres. Soc'y v. Watkins*, 754 F. Supp. 1450, 1455 (D. Haw. 1991).

If the nonmoving party fails to assert specific facts, beyond the mere allegations or denials in its response, summary judgment may be entered. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990); Fed. R. Civ. P. 56(e). There is no genuine issue of fact if the opposing party fails to offer evidence "sufficient to establish the existence of an element essential to that party's case[.]" *Celotex*, 477 U.S. at 322.

A defendant may assert affirmative defenses by a motion for summary judgment. Fed. R. Civ. P. 56. The motion for summary judgment will be granted when "it raises at least one legally sufficient defense to bar the plaintiff's claim and no triable issue of fact relates to that defense." *SEC v. Seaboard Corp.*, 677 F.2d

1301, 1308 (9th Cir. 1982); *see e.g.*, *Dam v. Gen. Elec. Co.*, 265 F.2d 612, 614 (9th Cir. 1958); *Benjamin v. W. Boat Bldg. Corp.*, 475 F.2d 1085, 1086 (9th Cir. 1973). "If the moving party's defense is legally inadequate or would require the adjudication of fact issues, the motion will be denied." *Seaboard*, 677 F.2d at 1308; *U.S. v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990). "[A] decision [] based on an analysis of the contractual language and an application of the principles of contract interpretation . . . is a matter of law[.]" *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 367, (9th Cir. 1985); *see also In re U.S. Financial Securities Litigation v. Touche Ross & Co.*, 729 F.2d 628, 632 (9th Cir. 1984); *Hekker v. Sabre Const. Co.*, 265 Ore. 552, 510 P.2d 347, 349 (1973); 11 James Wm. Moore et. al., Moore's Federal Practice § 56.25 (3d ed. 2015) ("If a claim or defense is predicated on a written, integrated contract, the case may be particularly suited for resolution by summary judgment.").

## IV.   DISCUSSION

In moving for summary judgment, Defendant asserts the defenses of consent, waiver, and assumption of the risk.  Doc. No. 110.  Defendant argues that "[b]y virtue of their execution of [the Deed, the Richmonds] agreed that they were subject to each and every provision of the Community Charter for Kukuiʻula, and accepted and agreed to the waivers and disclosures concerning ongoing construction activity within Kukuiʻula and resulting dust and annoyances."  Doc.

10

No. 110-1 at 8.  Plaintiff argues that because there was no evidence that Defendant Unlimited was a designated construction company under the Charter, the Richmonds could not have consented to any waiver of any rights against Defendant Unlimited.  Doc. No. 136 at 12.  Plaintiff's argument is unpersuasive.

It is axiomatic that a deed is a writing containing a contract sealed and delivered by the party thereto.  *See Kalihilihi v. Kaina*, 5 Haw. 330, 332 (1885).  In addition, "a patent, deed or other document referred to in a deed is to be read as if it were a part of the deed."  *Ahmi v. Waller*, 15 Haw. 497, 498–99 (1904).  The Deed the Richmonds received provided, "The Lot is also subject to (in addition to the matters set forth above) each and every provision of that certain Community Charter for Kukui'ula[.]"  Def.'s CSF at ¶¶ 6, 8.  Chapter 15.6 put property owners on notice of "Ongoing Construction Activities" to be conducted by "the Declarant, The Club, Builders designated by the Declarant, or other Owners," and Chapter 15.13 notified property owners of future "blasting, excavation, construction, and other activities" conducted by "Declarant, Declarant Affiliates, and/or their agents, contractors, subcontractors, licensees, and other designees, successors, or assigns."  Pl.'s FSCSF, Ex. 3 at 62.

There is no evidence that Defendant Unlimited was not a "Builder[]" designated by the Declarant, or other Owners," or that Defendant Unlimited was not a "Declarant Affiliate[], and/or [] agent[], contractor[], subcontractor[],

11

licensee[], [or] other designee[], successor[], or assign[ee]." Def.'s CSF at ¶¶ 6, 8;

Pl.'s FSCSF, Ex. 3 at 62. Here, the only reasonable inference is that Defendant

Unlimited was so designated. Indeed, "[a] question of interpretation is not left to

the trier of fact where evidence is so clear that no reasonable person would

determine the issue in any way but one." *Courbat v. Dahana Ranch, Inc.*, 111

Haw. 254, 263, 141 P.3d 427, 436 (2006) (quoting *Amfac, Inc. v. Waikiki*

*Beachcomber Inv. Co.*, 74 Haw. 85, 87, 839 P.2d 10, 15 (1992)); *see also Fujii v.*

*Osborne*, 67 Haw. 322, 329, 687 P.2d 1333, 1339 (1984). Having found: (1) that

the Richmonds entered into a contractual agreement regarding the ongoing

construction at Kukuiʻula, and (2) that Defendant was a designated builder, the

Court addresses each of Defendant's defenses asserted in its Motion for Summary

Judgment.

**A. Consent**

The Court first addresses Defendant's consent defense because the defense

precludes both Plaintiff's trespass and nuisance claims. Defendant argues that

"[b]y virtue of their execution of their deed, [The Richmonds] agreed that they

were subject to each and every provision of the Community Charter for Kukuiʻula,

and accepted and agreed to the waivers and disclosures concerning ongoing

construction activity within Kukuiʻula and resulting dust and annoyances." Doc.

No. 110-1 at 8. The Court concurs, and thus Defendant's consent defense precludes Counts II and III of the Complaint.

The defense of consent is based on the basic tort law principle of *volenti non fit injuria*, meaning that "to one who consents no wrong is done." *Burrows v. Hawaiian Tr. Co.*, 49 Haw. 351, 360, 417 P.2d 816, 821 (1966); *see also* Spieser et. al., 1A American Law of Torts § 5:7 (2018). A defendant may assert the affirmative defense of consent for intentional tort claims, including private nuisance and trespass actions. *See Bush v. Watson*, 81 Haw. 474, 486, 918 P.2d 1130, 1142 (1996); *see also Pao v. Diamond Head Mem'l Park Ass'n*, 38 Haw. 270, 271 (1948); 9 Powell on Real Property §§ 64.01–02 (2018). Therefore, the defense applies only to Counts II and III of the Complaint.

Chapter 15 of the Charter is titled "Disclosures and Waivers" and states, "Each Owner, by accepting a deed to property in Kukuiʻula, also accepts and agrees to the matters set forth in this chapter." Chapter 15.13 provides notice of "Blasting and Other Activities" and states, "the Owners and all occupants and users of Units acknowledge, stipulate, and agree [] that such activities shall not be deemed nuisances, or noxious or offensive activities, under any applicable covenants or at law generally." Pl.'s FSCSF at 58–62.

Plaintiff failed to present evidence establishing a genuine issue of material fact as to the Richmonds' consent to other construction and attendant nuisances,

including red dirt.  It is undisputed that the Richmonds received a copy of the

Charter at the time of closing.  Def.'s CSF, Ex. A at 140–142.  While Plaintiff

presented evidence that the Richmonds did not understand the Charter and Deed

when they purchased the Property, Pl.'s FSCSF, Ex. 1 at 67, Ex. 2 at 20–22, it is

undisputed that the Richmonds were represented by counsel throughout the

conveyance.  Def.'s CSF at ¶ 7.  Unfortunately for Plaintiff, under Hawaiʻi law, a

failure to understand a contract's terms does not absolve a party of its contractual

duties:

> [I]t is a fundamental rule of contract law that a competent
> party who signs a written instrument is bound by its
> terms; and in the absence of allegations of mistake, fraud,
> or duress, a failure to read or understand the contents of the
> instrument cannot relieve the signing party of the obligation
> imposed therein.

*Liberty Bank v. Shimokawa*, 2 Haw. App. 280, 283–84, 632 P.2d 289, 292 (1981).

The Richmonds expressly consented to any trespass and nuisance caused by

construction when they executed the Deed.  Plaintiff argues that, at best, the

Richmonds "consented to being aware of the presence of construction activity,"

and that Defendants have failed to identify the scope of the consent as required

under the Restatement of Torts.  Doc. No. 136. at 13 (citing Restatement 2d of

Torts, § 892A).  According to the Restatement, "To be effective, consent must be

. . . to the particular conduct, or to substantially the same conduct."  Restatement

2d of Torts, § 892A.  The Hawaiʻi Supreme Court has not analyzed the scope of

14

consent in a contract for land, but the Court has acknowledged that consent to an intentional tort can be limited. *See Burrows*, 49 Haw. at 361, 417 P.2d at 821.

In this case, there is no evidence that Defendant Unlimited's conduct went beyond the scope of consent defined in the contract. Fia testified that there were "piles and piles of dirt" on the construction sites for "weeks on end" and "for over a year, year and a half," and that "many times…dirt was left uncovered." Pl.'s FSCSF, Ex. 2 at 39–42. However, the Deed provides notice of "blasting, excavation, construction, and other activities within Kukuiʻula, which may cause windblown dust and other nuisances typically associated with such activities" and continues:

> (c) that the Declarant, any Declarant Affiliate, *and all of their agents, contractors, subcontractors, licensees, and other designees, successors, and assigns, shall not be liable but, rather, shall be held harmless for any and all losses, damages (compensatory, consequential, punitive, or otherwise), injuries, or deaths arising from or relating to the aforesaid activities*; (d) that any purchase or use of any portion of a Unit has been and will be made with full knowledge of the foregoing; and (e) that this acknowledgement and agreement is a material inducement to the Declarant or its Declarant Affiliates to sell, convey, lease, and/or allow the use of Units.

FSCSF, Ex. 3 at 62 (emphasis added). As stated above, "[a] question of interpretation is not left to the trier of fact where evidence is so clear that no reasonable person would determine the issue in any way but one." *Courbat*, 111 Haw. at 263, 141 P.3d at 436 (internal citations omitted). There is no genuine

issue of material fact as to whether Unlimited's behavior fell within the scope of the Richmonds' consent, as acknowledged in the Charter.

Moreover, there is no evidence that the Richmonds revoked their consent when they met with Defendant's representatives to inquire about the excessive dirt entering their home.  Pl.'s FSCSF at ¶ 24, Ex. 1 at 53–55.  Phil testified that the purpose of the meeting was "[t]o understand what the extent of the construction was[.]"  Pl.'s FSCSF, Ex. 1 at 54–55.  Fia testified that they discussed the red dirt in the house and on the lanai, and Phil asked "how they were going to manage or take care of cleaning it."  Pl.'s FSCSF, Ex. 2 at 56–57.  Even interpreting the evidence in the light most favorable to Plaintiff, these statements do not suggest a revocation of consent.  Therefore, the consent defense precludes Plaintiff's trespass and nuisance claims, and Defendant's Motion for Summary Judgment is GRANTED as to Counts II and III.

## B. Waiver

Defendant also asserts the defense of waiver, arguing that "[when the Richmonds] accepted and agreed to the disclosures and waivers" in the Deed and Charter, it "constitute[d] a waiver as to the construction dust claims against Unlimited."  Doc. 110-1 at 7.  The Court agrees.

"Waiver" refers to the "intentional relinquishment of a known right, a voluntary relinquishment of some rights, and the relinquishment or refusal to use a

right." *Anderson v. Anderson*, 59 Haw. 575, 586–87, 585 P.2d 938, 945 (1978) (internal citations omitted); *see also Ass'n of Owners of Kukui Plaza v. Swinerton & Walberg Co.*, 68 Haw. 98, 108, 705 P.2d 28, 36 (1985). "A waiver 'may be expressed or implied[,]' and 'it may be established by express statement or agreement, or by acts and conduct from which an intention to waive may be reasonably inferred.'" *Coon v. City & Cty. of Honolulu*, 98 Haw. 233, 261, 47 P.3d 348, 376 (2002) (quoting *Wilart Assocs. v. Kapiolani Plaza, Ltd.*, 7 Haw. App. 354, 359–60, 766 P.2d 1207, 1210–11 (1988)). "To constitute a waiver, there must have existed a right or privilege claimed to have been waived and the waiving party must have had knowledge, actual or constructive, of the existence of such right or privilege at the time of the purported waiver." *Honolulu Fed. Sav. & Loan Ass'n v. Pao*, 4 Haw. App. 478, 484, 668 P.2d 50, 54 (1983); *see also Stevens v. Cliffs at Princeville Assocs.*, 67 Haw. 236, 243, 684 P.2d 965, 969 (1984).

The Hawaiʻi Supreme Court has recognized waiver as a defense to negligence claims. *Laeroc Waikiki Parkside, LLC v. K.S.K. (Oahu) Ltd. P'ship*, 115 Haw. 201, 223, 166 P.3d 961, 983 (2007); *see also Fujimoto v. Au*, 95 Haw. 116, 155, 19 P.3d 699, 738 (2001) ("It is true that a party can contract to exempt himself from liability for harm caused by his negligence."). Public policy prevents parties from making contracts exempting themselves from liability for intentional torts. *Laeroc*, 115 Haw. at 224, 166 P.3d at 984.

When in contract, a waiver of negligence claims can present itself in the form of an exculpatory clause. *See Courbat*, 111 Haw. at 264, 141 P.3d at 437. Exculpatory clauses will be held void if they are "(1) violative of a statute, (2) contrary to a substantial public interest, or (3) gained through inequality of bargaining power." *Id.* at 264, 438 (internal citation omitted). Moreover, "The general rule of contract law is that one who assents to a contract is bound by it and cannot complain that he has not read it or did not know what it contained." *Id.* at 264, 437 (citing *Leong v. Kaiser Found. Hosps.,* 71 Haw. 240, 245, 788 P.2d 164, 168 (1990); *Joaquin v. Joaquin,* 5 Haw.App. 435, 443, 698 P.2d 298, 304 (1985); *In re Chung,* 43 B.R. 368, 369 (Bankr.D.Haw.1984); *In re Kealoha,* 2 B.R. 201, 209 (Bankr.D.Haw.1980)).

In *Courbat*, plaintiffs Lisa and Steven Courbat sued for negligence after Lisa was injured while horseback riding. *Id.* at 256, 429. The defendant ranch company filed a motion for summary judgment on the grounds that the Courbats had waived their rights to sue the ranch company. *Id*. at 260, 433. Defendant cited to the agreement the Courbats signed before riding, which included a waiver "releasing and holding harmless the Ranch from injury to [Lisa] resulting from [her] being a spectator or participant or while engaged in any such activity in the event-related facilities." *Id*. at 341, 258 (internal quotations omitted). The court held that the waiver was validly executed. *Id.* at 264, 437. The court reasoned that

although Steven alleged that he had not read the contract, he conceded that he relied on his wife to review documents before signing them.  *Id.* at 266, 439.  In addition, the court acknowledged that the couple had ample time to review the contract, were familiar with this type of contract, and had demonstrated their agreement by signing it.  *Id.*

Similar to the plaintiffs in *Courbat*, the Richmonds consented to Chapter 15's "Disclosures and Waivers" by executing the Deed.  The Deed language, which supports Defendant's consent defense, also supports Defendant's waiver defense.  Chapter 15 states, "that such [construction] activities *shall not be deemed . . . offensive activities, under any applicable covenants or at law generally*."  FSCSF, Ex. 3 at 62 (emphasis added).  Plaintiff conceded at the hearing that when purchasers are represented by an attorney in a property conveyance, the purchasers are assumed to understand the accepted terms.  There is no evidence that the waiver here was obtained in violation of a statute, in a manner contrary to public policy, or gained through unequal bargaining power.  Defendant's waiver defense precludes Plaintiff's negligence claim, and Plaintiff has not presented facts creating a triable issue regarding Defendant's waiver defense.  The Defendant's Motion for Summary Judgment is therefore GRANTED as to Count I.

## C. Assumption of the Risk

Defendant Unlimited also asserts the defense of express assumption of risk. Doc. No. 110-1 at 8. "This defense is an offshoot of the common law rule that 'volenti non fit injuria'-to one who consents no wrong is done." *Burrows*, 49 Haw. at 360, 417 P.2d at 821. "Express assumption of risk involves an express waiver or release, as by contract or written waiver." *Yoneda v. Tom*, 110 Haw. 367, 371, 133 P.3d 796, 800 (2006) (citing *Larsen v. Pacesetter Systems, Inc.*, 74 Haw. 1, 35, 837 P.2d 1273, 1290). The express assumption of risk defense "is essentially contractual in nature" and "may bar plaintiff's recovery in tort[.]" *Larsen*, 74 Haw. 1, 36, 837 P.2d 1273, 1291; *see also Krohnert v. Yacht Sys. Haw., Inc.*, 4 Haw. App. 190, 198, 664 P.2d 738, 744 (1983) (citing Restatement 2nd of Contracts, § 195) ("It is true that a party can contract to exempt himself from liability for harm caused by his negligence."); *Earl M. Jorgensen Co. v. Mark Construction*, 56 Haw. 466, 470, 540 P.2d 978 (1975). The Hawai'i Supreme Court has held that the theory of "assumption of risk" is applicable in negligence actions. *Craft v. Peebles*, 78 Haw. 287, 302, 893 P.2d 138, 153 (1995) (citing *Kaneko v. Hilo Coast Processing*, 65 Haw. 447, 464, 654 P.2d 343, 354 (1982)); *see also Amfac*, 74 Haw. at 122, 839 P.2d at 30; *Foronda ex rel. Estate of Foronda v. Hawaii Int'l Boxing Club*, 96 Haw. 51, 58, 25 P.3d 826, 833 (Ct. App. 2001) (collecting cases).

The Court has not found and the parties have not presented any binding precedent holding that the assumption of risk defense based on a property contract is available in a negligence case. The assumption of risk doctrine has most frequently been applied in cases involving recreational activities or contracts for services or employment. *See e.g.*, *Yoneda*, 110 Haw. at 372, 133 P.3d at 801 (applying assumption of risk doctrine to golfing case); *Burrows*, 49 Haw. at 360, 417 P.2d at 821 (1966) (applying assumption of risk doctrine to registered nurse's employment contract). The Hawai'i Supreme Court has declined to apply the assumption of risk defense in a claim based solely on breach of contract. *Amfac*, 74 Haw. at 123, 839 P.2d at 30 (holding that "because [Plaintiff's] claim for damages was premised solely on [breach of contract] and not on any claim that [Defendant] had committed a tort . . . the trial court erroneously applied the assumption of risk doctrine[.]") In the absence of controlling state precedent, a "federal court sitting in diversity must use its own best judgment in predicting how the state's highest court would decide the case." *Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir.1980). The Hawai'i Supreme Court is clear that in any contractual context, "A court must 'respect the plain terms of [a contract] and not create ambiguity where none exists.'" *State Farm Mut. Auto. Ins. Co. v. Fermahin*, 73 Haw. 552, 556, 836 P.2d 1074, 1077 (1992) (quoting *Smith v. New England Mutual Life Ins. Co.,* 72 Haw. 531, 537, 827 P.2d 635, 638 (1992)).

In light of this and *Amfac*, the Court concludes that the Hawaiʻi Supreme Court would likely hold that the assumption of risk defense based on a property contract is available in negligence cases.

The Richmonds expressly waived and therefore assumed the risk of "all losses, damages (compensatory, consequential, punitive, or otherwise), injuries, or deaths" arising from construction. Pl.'s FSCSF, Ex. 3 at 62. Therefore, in addition to Defendant's waiver defense, Defendant's assumption of risk defense also precludes Plaintiff's negligence claim. Similar to Defendant's consent and waiver defenses, Plaintiff has not provided any evidence showing a genuine issue of material fact as to the Richmond's assumption of risk.

The Defendant's Motion for Summary Judgment is GRANTED as to Count I.

## V. CONCLUSION

In accordance with the foregoing, Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's trespass, nuisance, and negligence claims asserted in Counts I, II, and III.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, December 6, 2018.



  /s/   Jill A. Otake_____

Jill A. Otake
United States District Judge